IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ROGER HEATER,
*Individually and on behalf of*
*all others similarly situated*,

        Plaintiffs,

v.              //   CIVIL ACTION NO. 1:21CV24
                          (Judge Keeley)

GENERAL MOTORS, LLC,

        Defendant.

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION TO DISMISS [DKT. NO. 23]

This putative class action arises from an alleged engine defect existing in certain vehicles sold by the defendant, General Motors, LLC ("GM") in West Virginia and nationwide. On February 10, 2021, the plaintiff, Roger Heater ("Heater"), filed a class action complaint alleging that, although GM knew its vehicles excessively consumed oil, it failed to disclose, and actively concealed, this defect from consumers. Pending is GM's motion to dismiss Heater's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. No. 23). For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.

## I.   BACKGROUND

In 2012, Heater purchased a 2011 Chevrolet Silverado equipped with GM's Generation IV 5.3 Liter V8 Vortec 5300 LC9 engine ("Generation IV Engine") and covered by GM's Limited Warranty. Id.

**HEATER ET AL. V. GENERAL MOTORS, LLC**                    **1:21CV24**

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION TO DISMISS [DKT. NO. 23]**

at 8.[1] He alleges that his vehicle, like the other Class Vehicles,[2] excessively consumes oil, which can result in low oil levels, insufficient lubricity levels, internal engine component damage, and engine failure. Id. at 2, 5–7. The primary cause of this "Oil Consumption Defect" is that the "piston rings that GM installed within the [Generation IV Engine] fail to keep oil in the crankcase." Id. at 3. Other issues with the Active Fuel Management System, the Positive Crankcase Ventilation ("PCV") system, the Oil Life Monitoring System, and the oil pressure gauge indicator on the dashboard exacerbate the defect. Id. at 3–5. Together, these defects cause "drivability problems" and place occupants at an increased risk of injury or death. Id. at 5.

Heater alleges that GM became aware of the Oil Consumption Defect as early as 2008 because, among others, GM consumers had filed a significant number of complaints regarding excessive oil consumption in the Class Vehicles. In addition, GM had issued several Technical Service Bulletins ("TSBs") to its dealers addressing excessive oil consumption in vehicles with the Generation IV Engine, and had abandoned the Generation IV Engine

---

[1] The Court takes the facts from the complaint and construes them in the light most favorable to Heater. See De'Lonta v. Johnson, 708 F.3d 520, 524 (4th Cir. 2013).

[2] The Class Vehicles include the 2011-2014 model year Chevrolet Avalanche, Chevrolet Silverado, Chevrolet Suburban, Chevrolet Tahoe, GMC Sierra, GMC Yukon, and GMC Yukon XL equipped with the Generation IV Engine. Id. at 1-2.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION TO DISMISS [DKT. NO. 23]**

for its redesigned Generation V 5.3 Liter V8 Vortec 5300 LC9 engine ("the Generation V Engine"). Moreover, in 2009, Old GM[3] had investigated the root cause of excessive oil consumption. Id. at 5-6, 14, 22-28.

Despite this knowledge, GM did not publicly disclose the Oil Consumption Defect and continued to sell Class Vehicles equipped with the Generation IV Engine to consumers like Heater. Id. at 6. Heater alleges that he first became aware of his vehicle's defect when there were fewer than 50,000 miles on its odometer. Had GM disclosed the Oil Consumption Defect, Heater contends he would not have purchased the vehicle, or "certainly would have paid less for it." Id. at 8.

Heater asserts six causes of action against GM: (1) violation of the West Virginia Consumer Credit and Protections Act ("WVCCPA"), (2) breach of express warranty, (3) breach of the implied warranty of merchantability, (4) fraudulent concealment, (5) unjust enrichment, and (6) violation of the Magnuson-Moss Warranty Act ("MMWA"). See Id. at 64-76. Heater asserts Counts One through Five on behalf of "[a]ll current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased

---

[3] Old GM refers to General Motors LLC prior to its bankruptcy. Old GM developed, manufactured, and sold vehicles equipped with the Generation IV Engine it filed Chapter 11 bankruptcy in 2009. Id. at 10. After the defendant GM acquired Old GM's assets and emerged from bankruptcy, it continued to manufacture and sell vehicles equipped with this engine.

**HEATER ET AL. V. GENERAL MOTORS, LLC**                    **1:21CV24**

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION TO DISMISS [DKT. NO. 23]**

or leased in the state of West Virginia ('the West Virginia Class')," and purports to assert a claim in Count Six on behalf of a nationwide class consisting of "[a]ll current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in the United States ('the Nationwide Class')." Id. at 61.

On April 13, 2021, GM moved to dismiss Heater's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and to strike Heater's nationwide class allegation pursuant to Federal Rule of Civil Procedure 12(f) (Dkt. No. 24). This motion is fully briefed and ripe for review.

## II. <u>MOTION TO DISMISS</u>

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move for dismissal on the grounds that a complaint does not "state a claim upon which relief can be granted." When reviewing a complaint, the Court "must accept as true all of the factual allegations contained in the complaint." <u>Anderson v. Sara Lee Corp.</u>, 508 F.3d 181, 188 (4th Cir. 2007) (quoting <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007)). "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION TO DISMISS [DKT. NO. 23]**

the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted).

A court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). "[A] complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" Anderson, 508 F.3d at 188 n.7 (quoting Twombly, 550 U.S. at 547). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## A. Violation of the West Virginia Consumer Credit and Protections Act ("WVCCPA") – Count One

Heater first alleges that GM violated the WVCCPA by omitting material facts about the Oil Consumption Defect (Dkt. No. 1 at 65–66). GM opposes Heater's WVCCPA claim on two bases: first, that he failed to sufficiently plead a cause of action; and second, that his claim is barred because he did not comply with the statute's pre-suit notice requirement (Dkt. No. 24 at 14-16).

Under the WVCCPA, a consumer who suffers a monetary loss as a result of an unfair or deceptive act may bring an action to recover damages. See W. Va. Code § 46A-6-106(a). To state a claim under the WVCCPA, a consumer must allege: (1) unlawful conduct by a seller; (2) an ascertainable loss on the part of the consumer;

HEATER ET AL. V. GENERAL MOTORS, LLC                    1:21CV24

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION TO DISMISS [DKT. NO. 23]**

and (3) proof of a causal connection between the alleged unlawful conduct and the consumer's ascertainable loss. White v. Wyeth, 705 S.E.2d 828, 837 (W. Va. 2010). But a consumer cannot bring a claim for a violation of the WVCCPA "until [he] has informed the seller . . . in writing and by certified mail of the alleged violation and provided the seller . . . twenty days from receipt of the notice of violation to make a cure offer." Bennett v. Skyline Corp., 52 F. Supp. 3d 796, 812 (N.D.W. Va. 2014) (citing W. Va. Code § 46A-6-106(b)). "[T]he plaintiff's failure to comply with the mandatory prerequisite set forth in Section 46A-6-106(b) bars [him] from bringing a [WVCCPA] claim." Stanley v. Huntington Nat. Bank, 2012 WL 254135, at *7 (N.D.W. Va. Jan. 27, 2012).

Regardless of whether Heater has sufficiently pleaded a WVCCPA claim, he has not complied with the statute's mandatory prerequisites because he did not inform GM of the Oil Consumption Defect or provide it twenty (20) days to make a cure offer before bringing this lawsuit. Thus, he is barred from asserting a WVCCPA claim in this action.

Heater, however, argues that he was exempt from the WVCCPA's pre-suit notice requirement because West Virginia law does not require a plaintiff to perform a futile act as a pre-condition to seeking a remedy (Dkt. No. 29 at 17-18). In support, he cites to Carter v. City of Bluefield, 54 S.E.2d 747, 754 (W. Va. 1949),

6

HEATER ET AL. V. GENERAL MOTORS, LLC                    1:21CV24

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND**
**DENYING IN PART DEFENDANT'S MOTION TO DISMISS [DKT. NO. 23]**

where, the Supreme Court of Appeals of West Virginia held that, "[a]s a general rule, the petitioner, before instituting a proceeding in mandamus, must demand performance of the act or the duty which he seeks to enforce; but when it appears that a demand would be useless or unavailable it need not be made."[4] Id. at Syl. Pt. 1, 754 (emphasis added) ("If mandamus be the proper remedy to obtain the relief to which the petitioners are entitled, they will not be required to do a useless or futile act before proceeding to invoke that remedy.").

Heater attempts to apply the holding in Carter to his WVCCPA claim. He contends that, under that statute, he was not required to give GM prior notice of the Oil Consumption Defect because it had actively concealed the defect for years, and so any pre-suit notice would have been futile (Dkt. No. 29 at 17–18).

Heater is mistaken in his contention. He seeks damages under a statutory scheme containing specific notice requirements. Thus,

---

[4] In Carter, a landowner sought to build a business in a residential zoning area. Id. at 751–53. Prior to construction, however, a city ordinance required any landowner to first obtain a zoning permit, and then a building permit. Id. at 753–54. After the city denied his application for a zoning permit, the landowner, without having also applied for a building permit, filed a mandamus action challenging the city's zoning ordinance. Id. The city opposed his petition because he had not filed, and the city had not refused, his application for a building permit. Id. Observing that the city would have denied the landowner's building permit application because he had not first obtained a zoning permit, West Virginia's highest court held that the landowner was not required to "pursue a vain and futile course," or apply for a building permit, prior to bringing his mandamus action. Id.

HEATER ET AL. V. GENERAL MOTORS, LLC                    1:21CV24

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND**
**DENYING IN PART DEFENDANT'S MOTION TO DISMISS [DKT. NO. 23]**

whether a petitioner must complete certain actions prior to seeking mandamus relief is irrelevant. The WVCCPA unequivocally requires that, before bringing a claim for relief, a consumer such as Heater must put GM on notice of its violative conduct and give it an opportunity to cure the resulting harm. Because the WVCCPA makes no exception for futility, the Court **GRANTS** GM's motion to dismiss his WVCCPA claim.

## B.    Breach of Express Warranty — Count Two

Heater asserts that GM breached his vehicle's Limited Warranty by failing to repair the Oil Consumption Defect (Dkt. No. 1 at 67–70). GM's challenge to this claim raises three issues: (1) whether the Oil Consumption Defect is a manufacturing defect or a design defect; (2) whether the Limited Warranty covers both manufacturing defects and design defects, or only manufacturing defects; and (3) whether Heater's express warranty claim is barred because he never sought, and GM never denied, repairs for the Oil Consumption Defect.

First, GM argues that the Oil Consumption Defect is a design defect to which the Limited Warranty does not apply (Dkt. No. 24 at 4-5). But Heater asserts that the Oil Consumption Defect is a manufacturing defect because it is caused by defective piston rings and piston ring coating, both of which are materials (Dkt. No. 29 at 7).

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION TO DISMISS [DKT. NO. 23]

"Design defects are distinct from manufacturing defects."
Martell v. Gen. Motors LLC, 2021 WL 1840759, at *5 (D. Or. May 7, 2021). Compare Design Defect, BLACK'S LAW DICTIONARY (11th ed. 2019) ("An imperfection occurring when the seller or distributor could have reduced or avoided a foreseeable risk of harm by adopting a reasonable alternative design, and when, as a result of not using the alternative, the product or property is not reasonably safe. — Also termed defective design. Cf. manufacturing defect."), with Manufacturing Defect, BLACK'S LAW DICTIONARY (11th ed. 2019) ("An imperfection in a product that departs from its intended design even though all possible care was exercised in its assembly. Cf. design defect."). "It is generally understood 'that defects in material and workmanship refer to departures from a product's intended design while design defects refer to the inadequacy of the design itself.'" Tucker v. Gen. Motors LLC, 2021 WL 2665761, at *2 (E.D. Mo. June 29, 2021) (quoting Bruce Martin Const., Inc. v. CTB, Inc., 735 F.3d 750, 753 (8th Cir. 2013).

Throughout the complaint, Heater contends that each Class Vehicle contains the same defect because it is equipped with the Generation IV Engine, which excessively consumes oil.[5] A plaintiff

---

[5] See e.g., ¶ 115 ("GM abandoned the design flaws causing excessive oil consumption in the Class Vehicles in its redesigned Generation V Vortec 5300 Engines."); ¶ 225 ("The Oil Consumption Defect is a uniform design defect that is related to materials."); ¶ 274 (The Generation IV Engine is "designed so as to prematurely consume an abnormally large amount of

HEATER ET AL. V. GENERAL MOTORS, LLC                    1:21CV24

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION TO DISMISS [DKT. NO. 23]**

asserting that a class of vehicles all have the same defect, has alleged a design defect, not a manufacturing defect. Id. (citing Freeman v. Toyota Motor Sales, USA, Inc., 2020 WL 7041810, at *2 (E.D. Mo. Nov. 30, 2020).

Heater also argues that the Oil Consumption Defect is a manufacturing defect because it relates to defective materials such as the selected piston rings and piston ring coating. But, as discussed in Davidson v. Apple, Inc., 2017 WL 3149305, at *21 (N.D. Cal. July 25, 2017), a manufacturer's choice of certain materials to construct a product is a "design decision," not a defect in "materials and workmanship." The piston rings and piston ring coating in each Generation IV Engine were part of GM's intended design and any resulting defect from GM's materials selection is a design defect. Because Heater challenges the adequacy of GM's design of the Generation IV Engine's design, rather than any departure from the intended design, the alleged Oil Consumption Defect is properly construed as a design defect.

Next, GM contends that the Limited Warranty covers only manufacturing defects and the Oil Consumption Defect thus is excluded from its warranty coverage (Dkt. No. 24 at 4-5). Heater,

_____

oil, resulting in low oil levels, reduced lubricity, and engine damage.").

HEATER ET AL. V. GENERAL MOTORS, LLC                    1:21CV24

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION TO DISMISS [DKT. NO. 23]**

on the other hand, asserts that the Limited Warranty applies to manufacturing defects and design defects alike (Dkt. No. 29 at 7).

The Limited Warranty provides that GM will repair or replace defects in materials or workmanship free of charge if they become apparent during the warranty period (Dkt. No. 1 at 68). Specifically, it states:

> The Warranty covers repairs to correct any vehicle defect, not slight noise, vibrations, or other normal characteristics of the vehicle related to materials or workmanship occurring during the warranty period.

Id.

This warranty language has been heavily litigated. One court interpreting the Limited Warranty as it relates to the Oil Consumption Defect summarized the parties' positions as follows:

> Plaintiff argues that the text of this clause includes, as it expressly states, "any vehicle defect" except for "slight noise, vibrations, or other normal characteristics of the vehicle related to materials or workmanship occurring during the warranty period." Under Plaintiff's reading, the phrase "related to materials or workmanship" modifies the "normal characteristics of the vehicle" that are excluded from coverage, and "slight noise" and "vibrations" are two examples of such "normal characteristics of the vehicle related to materials or workmanship." Because the Oil Consumption Defect is not a normal characteristic of the vehicle related to materials or workmanship, similar to slight noise or vibrations, Plaintiff argues, that alleged defect is covered by the express warranty and not excluded.
>
> GM, however, argues that "related to materials or workmanship" does not apply to the phrase or list immediately preceding that phrase, but instead modifies

HEATER ET AL. V. GENERAL MOTORS, LLC                    1:21CV24

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION TO DISMISS [DKT. NO. 23]**

> "any vehicle defect." Under this reading, the clause
> would still exempt "slight noise, vibrations, and other
> normal characteristics of the vehicle" but the phrase
> "related to materials or workmanship" would not be read
> as limited to the modification of those items. . . .

Martell, 2021 WL 1840759, at *6.

GM argues its position has been adopted by the "overwhelming majority of courts" (Dkt. No. 34 at 1). A survey of the cases interpreting GM's Limited Warranty, however, establishes that a split exists among the courts that have addressed the question. As GM contends, some courts have read the plain language of the Limited Warranty to cover only defects in materials or workmanship, not design defects. See e.g., Nauman v. Gen. Motors LLC, 2021 WL 4502666, at *3 (W.D. Wash. Oct. 1, 2021); Harris v. Gen. Motors LLC, 2020 WL 5231198, at *3 (W.D. Wash. Sept. 2, 2020), order vacated in part on reconsideration, 2020 WL 10692982 (W.D. Wash. Oct. 19, 2020); Szep v. Gen. Motors LLC, 491 F. Supp. 3d 280, 291 (N.D. Ohio 2020); and Sloan v. Gen. Motors LLC, 2017 WL 3283998, at *8 (N.D. Cal. Aug. 1, 2017). Notably, these courts "each assumed, without discussion, that the warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period." Tucker, 2021 WL 2665761, at *3.

In contrast, those courts that have carefully analyzed the Limited Warranty's terms and grammar have concluded that it covers

12

HEATER ET AL. V. GENERAL MOTORS, LLC                    1:21CV24

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION TO DISMISS [DKT. NO. 23]**

both manufacturing and design defects. See e.g., Martell, 2021 WL
1840759, at *6; Tucker, 2021 WL 2665761, at *2; McKee v. Gen.
Motors LLC, 376 F. Supp. 3d 751, 756 (E.D. Mich. 2019); and Weiss
v. Gen. Motors LLC, 418 F. Supp. 3d 1173, 1181 (S.D. Fla. 2019).
This Court agrees.

Under West Virginia law, "[a] valid written instrument which
expresses the intent of the parties in plain and unambiguous
language is not subject to judicial construction or interpretation
but will be applied and enforced according to such intent." Syl.
Pt. 1, Cotiga Dev. Co. v. United Fuel Gas Co., 128 S.E.2d 626
(W.Va.1962); see also Syl. Pt. 2, Orteza v. Monongalia County Gen.
Hosp., 318 S.E.2d 40 (W.Va.1984) ("Where the terms of a contract
are clear and unambiguous, they must be applied and not
construed.").

The plain and unambiguous language of GM's Limited Warranty
supports Heater's contention that its coverage is not limited to
manufacturing defects. As explained by the court in Martell v.
General Motors:

> First, the clause sets out a broad array of coverage
> ("This warranty covers repairs to correct any vehicle
> defect"). Then, a comma and the word "not" are used to
> separate that broad category of coverage from what is
> "not" covered ("This warranty covers repairs to correct
> any vehicle defect, not ..."). Next, the category of
> issues that are not covered is defined ("slight noise,
> vibrations, or other normal characteristics of the
> vehicle ..."). . . . . [Finally,] the phrase "related to
> materials or workmanship" modifies the phrase "other

13

HEATER ET AL. V. GENERAL MOTORS, LLC                          1:21CV24

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION TO DISMISS [DKT. NO. 23]**

normal characteristics of the vehicle" or, possibly, the
longer phrase "slight noise, vibrations, or other normal
characteristics of the vehicle."

Martell, 2021 WL 1840759, at *6.

GM contests this reading of its Limited Warranty, arguing
that the phrase "related to materials or workmanship" actually
modifies the earlier phrase "any vehicle defect," not the
warranty's list of exclusions. This argument is unpersuasive. Such
interpretation would require the Court to read into the contract
a comma between phrases "vehicle" and "related to materials or
workmanship." Without punctuation between these terms in the
Limited Warranty, there is no indication that they are not
connected or should not be read together.

Therefore, after carefully considering the parties'
arguments, the Court concludes that the Limited Warranty's plain
language indicates that it is not restricted to manufacturing
defects, but rather covers repairs to correct any vehicle defect,
except "slight noise, vibrations, or other normal characteristics
of the vehicle related to materials or workmanship." Accordingly,
because the Oil Consumption Defect is a design defect that does
not fall within one of the enumerated exceptions, it is within the
scope of the Limited Warranty.

GM argues that this interpretation is an "overly strict
grammatical interpretation . . . not in line with West Virginia

14

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION TO DISMISS [DKT. NO. 23]**

law or reasonable consumer expectations (Dkt. No. 34 at 1). But, under West Virginia law, contractual interpretation is governed by the plain language of the contract and "it is unclear why [GM] expects the consumer to expect something other than what the plain English of the warranty promises." <u>Tucker</u> 2021 WL 2665761, at *4. Moreover, it is unlikely that a reasonable consumer would opt to reduce the scope of the Limited Warranty's coverage to manufacturing defects only. <u>Martell</u>, 2021 WL 1840759, at *8.

Finally, GM contends that Heater's express warranty claim fails because the warranty limits his remedies to a right of repair, and having not sought repairs during the warranty period he is barred from asserting a claim for damages (Dkt. No. 24 at 7). An express warranty is created "when the affirmation of fact, promise or description of the goods is part of the basis of the bargain made by the seller to the buyer about the goods being sold." Syl. Pt. 7, <u>Reed v. Sears, Roebuck & Co.</u>, 426 S.E.2d 539 (1992) (citing W. Va. Code § 46-2-313(1)(a)-b) (1966)). The buyer bears the burden of establishing that the seller breached an express warranty. <u>Appalachian Leasing, Inc. v. Mack Trucks, Inc.</u>, 765 S.E.2d 223, 228 (W. Va. 2014) (citing W. Va. Code § 46-2-607(4)). "[W]here an express warranty limits the buyer's remedies to repair or replacement of parts found to be defective, the refusal or inability of the seller to remedy the defect is a

HEATER ET AL. V. GENERAL MOTORS, LLC                          1:21CV24

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND**
**DENYING IN PART DEFENDANT'S MOTION TO DISMISS [DKT. NO. 23]**

failure of the essential purpose of the express warranty, and the buyer may pursue remedies and damages." Id.

Here, Heater can assert a claim for damages for GM's breach of express warranty only if his vehicle is inherently defective and unusable because of the Oil Consumption Defect, and GM has refused or has been unable to repair it. Appalachian Leasing, Inc., 765 S.E.2d at 229. Heater acknowledges that even though his vehicle excessively consumed oil before he had driven it 50,000 miles, he did not seek repairs for this issue. Consequently, he cannot now argue that GM refused to repair or replace defective parts in his vehicle. Nor can he plausibly assert that GM could not effectively repair the Oil Consumption Defect given that it never had an opportunity to try.

Heater asserts that any request for repairs would have been futile. But the attempts of other consumers to remedy the Oil Consumption Defect in their own vehicles cannot sustain his claim. Because Heater has not sufficiently pleaded a breach of express warranty claim, the Court **GRANTS** GM's motion to dismiss this cause of action.

### C.  Breach of Implied Warranty of Merchantability – Count Three

Heater alleges that GM breached the implied warranty of merchantability by selling Class Vehicles that were unfit for their ordinary and intended use due to the Oil Consumption Defect (Dkt.

16

HEATER ET AL. V. GENERAL MOTORS, LLC                    1:21CV24

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION TO DISMISS [DKT. NO. 23]**

No. 1 at 70). GM opposes Heater's claim as insufficiently pleaded
and untimely (Dkt. No. 24 at 7-8).

Under West Virginia law, "a warranty of merchantability is
implied in any contract for sale of goods where the seller is a
merchant with respect to goods of that kind and assures buyer that,
among other things, goods are fit for ordinary purposes for which
they are used." Mountaineer Contractors, Inc. v. Mountain State
Mack, Inc., 268 S.E.2d 886, 889 (W. Va. 1980) (citing W. Va. Code
§ 46-2-314). A vehicle is "merchantable" if it is fit for basic
transportation. Frazier v. Gen. Motors, 2018 WL 300577, at *3 (W.
Va. Jan. 5, 2018).

Here, Heater alleges that the Class Vehicles are unfit for
their ordinary purpose due to the Oil Consumption Defect, which
can lead to "drivability problems," including engine damage,
engine misfires, and total power loss (Dkt. No. 1 at 5, 70).
Accordingly, the Oil Consumption Defect makes the Class Vehicles
unreliable and places occupants at an increased risk of injury or
death. Id. at 5. As to Heater's own vehicle, although admitting he
drove it without incident for some time, he alleges that it
suffered early engine degradation, which compromised his safety.
Based on these allegations, it is plausible that the Class Vehicles
were unfit for basic transportation when sold by GM. Therefore,

HEATER ET AL. V. GENERAL MOTORS, LLC                                     1:21CV24

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION TO DISMISS [DKT. NO. 23]**

Heater has sufficiently pleaded a claim for breach of the implied warranty of merchantability.

To avoid dismissal, however, Heater's implied warranty claim also must be timely. West Virginia law establishes a five-step analysis for determining whether such a cause of action is time-barred:

> First, the court should identify the applicable statute of limitation for each cause of action. Second, the court (or, if material questions of fact exist, the jury) should identify when the requisite elements of the cause of action occurred. Third, the discovery rule should be applied to determine when the statute of limitation began to run by determining when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action. Fourth, if the plaintiff is not entitled to the benefit of the discovery rule, then determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action. Whenever a plaintiff is able to show that the defendant fraudulently concealed facts which prevented the plaintiff from discovering or pursuing the potential cause of action, the statute of limitation is tolled. And fifth, the court or the jury should determine if the statute of limitation period was arrested by some other tolling doctrine. Only the first step is purely a question of law; the resolution of steps two through five will generally involve questions of material fact that will need to be resolved by the trier of fact.

Syl. Pt. 5, <u>Dunn v. Rockwell</u>, 689 S.E.2d 255, 265 (W. Va. 2009).

Here, Heater's implied warranty of merchantability claim is subject to a four-year statute of limitations. <u>See</u> <u>Taylor v. Ford Motor Co.</u>, 408 S.E.2d 270, 273 (W. Va. 1991). This period runs

18

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION TO DISMISS [DKT. NO. 23]

from the date GM delivered Heater's vehicle and is not impacted by the discovery rule. Id. Although he alleges that GM sold him an unfit vehicle in 2012, Heater did not bring his lawsuit until 2021. Therefore, his implied warranty claim is time-barred unless the limitations period has been tolled. He contends his claim is timely based on the doctrines of fraudulent concealment and class action tolling.

"Fraudulent concealment involves the concealment of facts by one with knowledge or the means of knowledge, and a duty to disclose, coupled with an intention to mislead or defraud." Trafalgar House Const., Inc. v. ZMM, Inc., 567 S.E.2d 294, 300 (W. Va. 2002). Where the plaintiff can demonstrate that the defendant "fraudulently concealed facts which prevented the plaintiff from discovering or pursuing the potential cause of action, the statute of limitation is tolled." Syl. Pt. 5, Dunn, 689 S.E.2d at 265.

Heater contends the fraudulent concealment doctrine tolled the limitations period for his implied warranty claim from the date of his purchase in 2012 (Dkt. No. 29 at 10-12). He asserts that GM knew the Generation IV Engine contained the Oil Consumption Defect as early as 2008. And, despite this knowledge, and its duty to disclose the Oil Consumption Defect, GM "affirmatively and actively concealed the [defect] when it issued the TSBs . . . that instructed dealers to offer purported repairs that it knew would

HEATER ET AL. V. GENERAL MOTORS, LLC                    1:21CV24

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION TO DISMISS [DKT. NO. 23]**

not cure the [defect]" (Dkt. No. 1 at 60). According to Heater, although he relied on GM to disclose the defect because it "was hidden and not discoverable through reasonable efforts," GM intentionally concealed the defect so that it could continue to sell vehicles equipped with the Generation IV Engine (Dkt. No. 29 at 11).

Whether Heater's limitations period was tolled by the fraudulent concealment doctrine raises material questions that a trier of fact must resolve. Syl. Pt. 5, Dunn, 689 S.E.2d at 265. But, at this early stage, Heater has pleaded sufficient facts to survive GM's motion to dismiss. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (A motion to dismiss "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.").

Heater also asserts that the class action tolling doctrine tolled his limitations period from February 27, 2017 until June 17, 2020 (Dkt. No. 10 at 21). "The commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the requirement of Rule 23(a)(1) been met." Am. Pipe & Const. Co. v. Utah, 414 U.S. 538, 539 (1974).

On December 19, 2016, several plaintiffs filed a class action against GM in the Northern District of California, "the Sloan

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION TO DISMISS [DKT. NO. 23]**

action," regarding the same Oil Consumption Defect at issue in this case (Dkt. No. 29 at 10); see Sloan, et al. v. Gen. Motors LLC, 16-cv-07244-EMC (N.D. Cal.). On February 27, 2017, a plaintiff joined the Sloan action as a representative of a subclass of individuals who had purchased a Class Vehicle in West Virginia. Id. Later, on June 17, 2020 the court narrowed this West Virginia subclass to exclude any vehicles manufactured on or after February 10, 2011. Id.

When the West Virginia plaintiff joined the Sloan action on February 27, 2017, he asserted several causes of action on behalf consumers like Heater who had purchased their Class Vehicle within the state of West Virginia, including a claim for GM's breach of West Virginia's implied warranty of merchantability. Accordingly, had the requirements of Federal Rule of Civil Procedure Rule 23(a)(1) been met, Heater would have been a member of the subclass in the Sloan action. He did remain a potential class member, however, until the court narrowed the subclass to exclude those West Virginia consumers who had purchased vehicles manufactured after February 10, 2011. Therefore, under the class action tolling doctrine, Heater is correct that his implied warranty of merchantability claim was tolled from February 27, 2017 through June 17, 2020.

HEATER ET AL. V. GENERAL MOTORS, LLC                    1:21CV24

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND**
**DENYING IN PART DEFENDANT'S MOTION TO DISMISS [DKT. NO. 23]**

Nevertheless, GM asserts that the four-year statute of limitations for Heater's implied warranty claim may have expired prior to the commencement of the Sloan action (Dkt. No. 23 at 6). Heater's claim is only timely if, prior to February 27, 2017, the limitations period had been tolled by the fraudulent concealment doctrine. As discussed earlier, Heater has sufficiently pleaded an implied warranty of merchantability claim and the timeliness of his claim under the fraudulent concealment doctrine raises material questions of fact. The Court therefore **DENIES** GM's motion to dismiss this claim.

**D.   Fraudulent Omission – Count Four**

Heater alleges that GM intentionally failed to disclose material information regarding the Oil Consumption Defect, thereby inducing him to purchase a vehicle with the defective Generation IV Engine (Dkt. No. 1 at 71–73). GM argues that Heater has failed to plead with particularity that it had pre-sale knowledge of the alleged defect or a duty to disclose this defect as required by Federal Rule of Civil Procedure 9(b) (Dkt. No. 24 at 9–14).

Pursuant to Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The "'circumstances' required to be pled with particularity are 'the time, place, and contents of the false representations, as well as the identity of the person making the

22

HEATER ET AL. V. GENERAL MOTORS, LLC                    1:21CV24

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION TO DISMISS [DKT. NO. 23]**

misrepresentation and what he obtained thereby.'" Harrison v.
Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999).
This heightened standard "aims to provide defendants with fair
notice of claims against them and the factual ground upon which
they are based, forestall frivolous suits, prevent fraud actions
in which all the facts are learned only following discovery, and
protect defendants' goodwill and reputation." McCauley v. Home
Loan Inv. Bank, F.S.B., 710 F.3d 551, 559 (4th Cir. 2013).

Under West Virginia law, "[f]raudulent concealment involves
the concealment of facts by one with knowledge or the means of
knowledge, and a duty to disclose, coupled with an intention to
mislead or defraud." Resh v. Realty Concepts, Ltd., 2016 WL 593809,
at *7 (S.D.W. Va. Feb. 12, 2016) (quoting Trafalgar House Constr.,
Inc. v. ZMM, Inc., 567 S.E.2d 294, 300 (W. Va. 2002). A fraudulent
omission, however, involves one party to a business transaction
disregarding its duty to disclose material information before the
transaction is complete. Id. Unlike fraudulent concealment claims,
claims of fraudulent omission do not require the plaintiff to show
an affirmative act of concealment. Id. at *6. Due to this
distinction, courts apply a more relaxed Rule 9(b) standard to
fraudulent omission claims. Id. at *3 (collecting cases).

Although Heater has titled Count Four of his complaint as
"Fraudulent Concealment/Omission," this count appears to contain

23

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION TO DISMISS [DKT. NO. 23]**

only a fraudulent omission claim (Dkt. No. 1 at 71). Allegations of fraudulent concealment are discussed in other areas of his complaint,[6] but Count Four is devoid of any allegation that GM knowingly concealed the Oil Consumption Defect, and discusses only GM's nondisclosure of essential information to consumers. See id. at 71–73. Moreover, in his response to GM's motion to dismiss, Heater refers to Count Four as "Plaintiff's fraudulent omissions claim" and only cites cases discussing nondisclosure (Dkt. No. 29 at 16). The Court therefore views Count Four as a fraudulent omission claim and will apply a more relaxed Rule 9(b) pleading standard.

For this claim to survive, Heater must have sufficiently alleged that GM knew about the Oil Consumption Defect and, despite its duty to do so, failed to disclose it to him. Heater alleges that GM had pre-sale knowledge of the Oil Consumption Defect from several sources. First, he states that GM received a significant number of consumer complaints regarding excessive oil consumption in vehicles equipped with the Generation IV Engine (Dkt. No. 1 at 6). According to Heater, these complaints were so numerous they prompted GM to launch an internal investigation in 2009. Id. at 22. Further, in 2010, the investigatory team reported that the

---

[6] Heater discusses GM's efforts to conceal the Oil Consumption Defect in connection with the timeliness of warranty claims, GM's violations of the WVCCPA, and GM's unjust enrichment.

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION TO DISMISS [DKT. NO. 23]

piston ring assembly caused excessive oil consumption. Id. He also contends that GM made subsequent design changes to the Generation IV Engine before abandoning it for its redesigned Generation V Engine. Id. at 23-25.

As well, Heater contends that GM acknowledged the Oil Consumption Defect by issuing a series of TSBs to dealers addressing excessive oil consumption by the Generation IV Engine. Id. at 16–17. At least two of these TSBs were issued before he purchased his vehicle. Id. Finally, Heater asserts that the Oil Consumption Defect was brought to GM's attention because consumers filed a substantial number of complaints with the National Highway Traffic Safety Administration ("NHTSA") regarding excessive oil loss and resultant engine damage in the Class Vehicles. Id.

GM vigorously disputes that its knowledge of the Oil Consumption Defect can be inferred from any of these sources (Dkt. No. 24 at 11–13). It asserts that Heater failed to allege where or how he specifically encountered GM communications, how he was misled by such information, which facts GM concealed or omitted, which GM employees were aware of these facts, when these employees learned of these facts, and the actions these employees they took, if any, to conceal the facts. Id. Rule 9(b) provides, however, that knowledge "may be alleged generally." Heater therefore is not required to plead GM's knowledge of the Oil Consumption Defect

HEATER ET AL. V. GENERAL MOTORS, LLC                    1:21CV24

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION TO DISMISS [DKT. NO. 23]**

with heightened particularity and, when viewed as a whole, his factual contentions make GM's knowledge facially plausible. Twombly, 550 U.S. at 547.

Heater was required to plead sufficient facts to establish that GM owed him a duty to disclose the Oil Consumption Defect. Under West Virginia law, a seller has a duty to disclose a defect in property where it is aware of a defect affecting the value of the property and the purchaser would not have discovered it by a reasonably diligent inspection. Logue v. Flanagan, 584 S.E.2d 186, 190 (W. Va. 2003). Here, he has alleged that the damage caused by the Oil Consumption Defect makes the Class Vehicles less valuable and requires repeated repairs. He also contends that the defect could not have been discovered through his reasonably diligent inspection due to its nature and GM's withholding of facts. Based on these allegations, Heater has pleaded with the requisite specificity that GM owed him a duty to disclose the Oil Consumption Defect.

Based on all this, the Court concludes that Heater has alleged facts, with sufficient particularity where required, to support his claim that GM fraudulently omitted material information about the Oil Consumption Defect. This conclusion is also supported by Fourth Circuit precedent cautioning district courts to "hesitate to dismiss a complaint under Rule 9(b) if [it] is satisfied (1)

HEATER ET AL. V. GENERAL MOTORS, LLC                    1:21CV24

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION TO DISMISS [DKT. NO. 23]**

that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that plaintiff has substantial pre-discovery evidence of those facts." McCauley, 710 F.3d at 559.

Because GM currently is litigating several cases across the country that are substantively identical to this case, and because some of these cases have progressed through discovery and summary judgment, GM is uniquely aware of the circumstances under which it must prepare its defense. And, based on his counsel's participation in those cases, Heater has substantial pre-discovery information concerning his claims. The Court therefore **DENIES** GM's motion to dismiss Heater's fraudulent omission claim as insufficiently pleaded pursuant to Rule 9(b).

### E.    Unjust Enrichment – Count Five

Heater asserts that GM sold Class Vehicles at an artificially inflated price based on the Oil Consumption Defect and, so, retained unjust benefits (Dkt. No. 1 at 73). GM argues that Heater cannot recover under a theory of unjust enrichment because an express contract exists between the parties (Dkt. No. 24 at 16).

Under West Virginia law, "if benefits have been received and retained under such circumstance that it would be inequitable and unconscionable to permit the party receiving them to avoid payment therefor, the law requires the party receiving the benefits to pay

27

HEATER ET AL. V. GENERAL MOTORS, LLC                    1:21CV24

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION TO DISMISS [DKT. NO. 23]**

their reasonable value." Copley v. Mingo County Board of Education,
466 S.E.2d 139 (W. Va. 1995). "Because an action for unjust
enrichment is quasicontractual in nature, it may not be brought in
the face of an express contract." Bright v. QSP, Inc., 20 F.3d
1300, 1306 (4th Cir. 1994) (citations and quotations omitted);
Gulfport Energy Corp. v. Harbert Priv. Equity Partners, LP, 851
S.E.2d 817, 822 (W. Va. 2020) ("The existence of an express
contract covering the same subject matter of the parties' dispute
precludes a claim for unjust enrichment." Federal Rule of Civil
Procedure 8, however, permits a plaintiff to plead alternative
claims. "When the terms of a contract are disputed," a plaintiff
may plead a claim of unjust enrichment as an alternative to a
breach of contract claim. Span Constr. & Eng'g, Inc. v. Uwharrie
Builders, LLC, 2019 WL 1574233, at *2 (N.D.W. Va. Jan. 30, 2019)
(collecting cases).

GM is correct that its Limited Warranty is an express contract
between the parties. But because GM and Heater dispute the terms
of this warranty and its applicability to the Oil Consumption
Defect, dismissal of Heater's unjust enrichment claim is not
appropriate at this time. Although Heater may not recover under
both breach of contract and unjust enrichment theories, he is
entitled to plead them in the alternative at this point of the
litigation. The Court therefore **DENIES** GM's motion to dismiss

HEATER ET AL. V. GENERAL MOTORS, LLC                    1:21CV24

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION TO DISMISS [DKT. NO. 23]

Heater's unjust enrichment claim, subject to renewal at a later
time.

### F.  Violation of the Magnuson-Moss Warranty Act ("MMWA") — Count Six

Finally, Heater alleges that GM violated the MMWA and brings
a claim for damages "individually and on behalf of the other
members of the nationwide class" (Dkt. No. 1 at 74-76). The MMWA
regulates warranties on consumer products distributed in
interstate commerce and "provides that, subject to certain
statutory requirements, an injured consumer can seek damages in a
civil action for warranty violations." Wolf v. Ford Motor Co., 829
F.2d 1277, 1278 (4th Cir. 1987) (citing 15 U.S.C. § 2310(d)). GM
argues that Heater's MMWA claim fails because he has not pleaded
a viable state law warranty claim, nor has he satisfied the MMWA's
"100-named plaintiff requirement"[7] (Dkt. No. 24 at 8-9). Regardless
of whether these arguments have merit, Heater's class MMWA claim
fails because he lacks standing to represent a nationwide class.

Before a court may address the merits of a plaintiff's claim,
"it has an obligation to assure itself that the merits question is
presented in a proper Article III 'case' or 'controversy.'" Daimler
Chrysler Corp. v. Cuno, 57 U.S. 332, 332 (2006). Under this
requirement, plaintiffs "must establish that they have standing to

---

[7] To assert a MMWA claim in a class action, there must be one hundred or
more named plaintiffs. 15 U.S.C. § 2310(d)(3)(C).

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION TO DISMISS [DKT. NO. 23]**

sue." Clapper v. Amnesty Intern. USA, 568 U.S. 398, 408 (2013)
(quotation omitted). To have standing, "the plaintiff must have
(1) suffered an injury in fact, (2) that is fairly traceable to
the challenged conduct of the defendant, and (3) that is likely to
be redressed by a favorable judicial decision." Lujan v. Defenders
of Wildlife, 504 U.S. 555, 561 (1992). The burden to establish
standing is on the party asserting it. Id. at 560-61. Here, Heater
attempts to assert claims on behalf of a nationwide class of
purchasers for violations of the express and implied warranty
statutes of all fifty states (Dkt. No. 1 at 74).

The Fourth Circuit has not addressed whether a plaintiff has
standing to bring nationwide class action allegations based on
violations of individual state statutes, or whether this issue
must be reserved for the class certification stage. Other courts,
however, have found that the "class-certification analysis may
precede [the] standing analysis when the class certification issue
[is] 'logically antecedent' to the standing issue." McKee, 376 F.
Supp. 3d at 755 (citations and quotation marks omitted).
Furthermore, the "'logical[ly] antecedent' language should be
construed in a manner that permits consideration of the standing
issue . . . prior to class certification." Smith v. Lawyers Title
Ins. Corp., 2009 WL 514210, at *3 (E.D. Mich. Mar. 2, 2009); see
also Johnson v. Nissan N. Am., Inc., 272 F. Supp. 3d 1168, 1175

HEATER ET AL. V. GENERAL MOTORS, LLC                    1:21CV24

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION TO DISMISS [DKT. NO. 23]**

(N.D. Cal. 2017) ("[D]istrict courts 'ha[ve] the discretion to defer questions of standing until after class certification,' but may nonetheless 'opt[ ], as a matter of case management,' to address standing in advance of class certification.").

"District courts within the Fourth Circuit have consistently held that plaintiffs do not have standing to bring claims under the statutes or laws of a state where they: (1) do not reside; and, (2) have not been harmed." Knapp v. Zoetis Inc., 2021 WL 1225970, at *9 (E.D. Va. Mar. 31, 2021) (collecting cases). Likewise, district courts in other circuits have applied this principle to class action allegations. See In re Packaged Ice Antitrust Litig., 779 F. Supp. 2d 642, 657 (E.D. Mich. 2011) ("[N]amed plaintiffs lack standing to assert claims under the laws of the states in which they do not reside or in which they suffered no injury."); In re Flonase Antitrust Litig., 610 F. Supp. 2d 409, 418 (E.D. Pa. 2009) (holding same). Named plaintiffs must satisfy these requirements personally. Those "who represent a class must allege and show that they personally have been injured not that the injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." In re Packaged Ice Antitrust Litig., 779 F.Supp.2d at 657 (quoting Lewis v. Casey, 518 U.S. 343, 347 (1996)).

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION TO DISMISS [DKT. NO. 23]**

Heater resides in, purchased his Class Vehicle in, and discovered the Oil Consumption Defect in West Virginia. While in Counts One through Five he brings claims under West Virginia law on behalf of a West Virginia Class, in Count Six he seeks to bring a MMWA claim on behalf of a nationwide class of current and former owners or lessees of a Class Vehicle (Dkt. No. 1 at 74). He has not alleged, however, that he suffered an injury under the warranty statute of any other state, and so "is not entitled to have this Court decide the merits of hypothetical violations of other states' . . . laws." Hassan, 2019 WL 123002, at *2 (E.D.N.C. Jan. 7, 2019). He therefore lacks standing to bring claims on behalf of a nationwide class. See e.g., Szep, 2020 WL 5834876, at *6 (dismissing MMWA claim brought on behalf of nationwide class for lack of standing), Weiss, 418 F. Supp. 3d at 1180-81 (holding same), McKee, 376 F. Supp. 3d at 755-56 (holding same); see also Hassan, 2019 WL 123002, at *2 (E.D.N.C. Jan. 7, 2019) (finding that the plaintiff lacked standing to claim violations of other states' consumer protection laws), Zaycer v. Sturm Foods, Inc., 896 F. Supp. 2d 399, 409 (D. Md. 2012) (dismissing a putative class action because the plaintiff did not have standing to sue under the consumer-protection statutes of any state other than Maryland). Accordingly, the Court **DISMISSES** for lack of standing Heater's MMWA claim on behalf of a nationwide class and **DENIES AS**

**MOOT** GM's motion to dismiss his nationwide class MMWA claim on other grounds.

GM also has moved to strike Heater's nationwide class action allegations pursuant to Federal Rule of Civil Procedure 12(f) because they would be governed by the laws of fifty states and the substantive variations in state laws would defeat Federal Rule of Civil Procedure 23's requirements of commonality, predominance, and superiority (Dkt. No. 24 at 16-18). Because the Court has dismissed Heater's nationwide class allegations, it **DENIES AS MOOT** GM's motion to strike these allegations.

Heater also alleges an individual MMWA claim. The MMWA creates a cause of action for consumers damaged by "the failure of a supplier, warrantor, or service contractor to comply with any . . . written warranty, implied warranty, or service contract," 15 U.S.C. § 2310(d), "provided that all individual claims have at least $25 in controversy and the total amount in controversy, aggregated across all claims, is at least $50,000." Lincoln v. Ford Motor Co., 2020 WL 5820985, at *11 (D. Md. Sept. 29, 2020). "The MMWA allows consumers to 'enforce written and implied warranties in federal court' by 'borrowing state law causes of action.' Thus, a court's 'disposition of the state law warranty claims determines [its] disposition of the [MMWA] claims.'" Lessin v. Ford Motor Co., 2021 WL 3810584, at *8 (S.D. Cal. Aug. 25, 2021)

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION TO DISMISS [DKT. NO. 23]**

(citing <u>Schimmer v. Jaguar Cars, Inc.</u>, 384 F.3d 402, 405 (7th Cir.
2004)); <u>see also</u> <u>Lincoln</u>, 2020 WL 5820985, at *11 (observing that
a plaintiff's MMWA claim derives from, and requires the same
analysis as, his state law warranty claims). Because Heater's
individual MMWA claim derives from his state law warranty claims,
and Heater has sufficiently pleaded an implied warranty of
merchantability claim under West Virginia law, the Court **DENIES**
GM's motion to dismiss his individual MMWA claim.

## III. <u>CONCLUSION</u>

For the reasons discussed, the Court:

1.  **GRANTS** GM's motion to dismiss Heater's WVCCPA claim
    (Count One);

2.  **GRANTS** GM's motion to dismiss Heater's express warranty
    claim (Count Two);

3.  **DENIES** GM's motion to dismiss Heater's implied warranty
    of merchantability claim (Count Three);

4.  **DENIES** GM's motion to dismiss Heater's fraudulent
    omission claim (Count Four);

5.  **DENIES** GM's motion to dismiss Heater's unjust enrichment
    claim (Count Five); and

6.  **DISMISSES** Heater's nationwide class MMWA claim for lack
    of standing (Count Six);

HEATER ET AL. V. GENERAL MOTORS, LLC                    1:21CV24

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION TO DISMISS [DKT. NO. 23]**

7.  **DENIES AS MOOT** GM's motion to dismiss Heater's

nationwide class MMWA claim (Count Six);

8.  **DENIES** GM's motion to dismiss Heater's individual MMWA

claim (Count Six); and

9.  **DENIES AS MOOT** GM's motion to strike Heater's nationwide

class allegations.

It is so **ORDERED.**

The Clerk **SHALL** transmit copies of this Order to counsel of

record by electronic means.

DATED: October 20, 2021

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE